In re ASSESSMENT OF PROPERTIES OF FITE FOUNDATION.

No. 34290.   Nov. 6, 1951.

*237 P. 2d 427.*

Ed A. Edmondson, Jr., Co. Atty., Muskogee County, Harold R. Shoemake, Asst. Co. Atty., Muskogee, for appellant.

Julian B. Fite, Muskogee, for appellee.

Chal. S. Wheeler, Muskogee, amicus curiae.

WELCH, J. Proceedings were commenced with the filing of protest by Fite Foundation, a corporation, against the assessment of its certain described real estate for taxation for the year 1948. The protest was denied by the board of equalization of Muskogee county, and the corporation appealed to district court.

This is an appeal by the county assessor of Muskogee county from a judgment and order of the district court sustaining the said protest of Fite Foundation and directing that said assessor alter or correct the assessment rolls of Muskogee county to show the properties involved to be exempt from taxation.

The record reflects the following state of facts:

The Fite Foundation was incorporated in April, 1938. The Articles of In-

corporation recite a purpose to carry on certain scientific, educational and charitable activities. Article VII provides:

" . . . no part of the net income of this corporation or of its property or assets upon dissolution or liquidation shall ever enure to the benefit of any of its members or any private individuals."

The corporation received gift of the property involved on December 31, 1947. On the same day it executed an agreement to make use of said property for the purposes outlined in its Charter of Organization, with provision that upon failure to so make use of the property before a lapse of five years, that it would transfer the property to a charity or public usage to be designated by the original donors, or by the district court of Muskogee county, if the first designation fail.

The property consists of four certain city lots with improvements thereon, consisting of a large two-story stone building and adjacent outbuildings. The premises were developed as a residential property and were formerly used in such purpose and constituted the ancestral home of the donors. The property was not in active use during the year 1948, except as a place of habitation of a caretaker and his wife.

The corporation employed architects to make plans for altering the buildings to suit its purposes, but no construction was commenced.

In its written protest the corporation stated that it was presently without funds with which to operate and that the upkeep of the property is paid by persons interested in the corporation. The record discloses, in fact, that the corporation since its creation has been without funds to engage in any operation. Thus it appears that the corporation intends, and has intended since 1938, to engage in charitable and benevolent activities at some indefinite future time, but it thus far has not so operated, and has not yet actively used

this property or any other property in carrying out the corporate purposes.

It was further stated in the corporation protest:

"The above property is directed wholly and entirely to the charitable and educational endeavors of this corporation. . . . Until some operating arrangement can be made it is unable to place the property in active use but such property is held to be used for the purposes above set forth."

The appellant contends that property owned by a charitable corporation must be used exclusively for charitable purposes before it can be exempt from taxation. Appellant asserts the contract entered into by the Fite Foundation and its occupation of the property by maintenance personnel and its employment of an architect was not a sufficient use of the property during the year 1948 as to bring the property within the terms of the constitutional provision for tax exemption.

Section 6, art. 10, of the Constitution provides that all property used exclusively for charitable purposes, and other certain designated purposes, shall be exempt from taxation.

It is well settled that the test as to whether certain properties come within an exempt class is the use to which said properties are put. Beta Theta Pi Corporation v. Board of Com'rs of Cleveland County, 108 Okla. 78, 234 P. 354; Southwestern Osteopathic Sanitarium v. Davis, Co. Treas., 115 Okla. 296, 242 P. 1033; In re Parks College, 170 Okla. 132, 39 P. 2d 105; Oklahoma County v. Queen City Lodge No. 197, I.O.O.F., 195 Okla. 131, 156 P. 2d 340.

In Southwestern Osteopathic Sanitarium v. Davis, supra, said the court:

"In determining whether property claimed to be used exclusively for educational, scientific, and charitable purposes is exempt from taxation, each case must stand upon its own merits, and the use to which the property is in fact dedicated is the test as to whether such property is exempt from taxa-

tion, and such use is a question of fact to be determined from the evidence."

In Oklahoma County v. Queen City Lodge, supra, it is said:

"By virtue of the Constitution a building and the grounds thereof owned by a nonprofit benevolent institution or corporation and used by such owner for the appropriate purposes and objects thereof is exempt from ad valorem taxation. But real estate, though so owned, is not so exempt if it is not used by the owner as above stated, . . ."

Herein, admittedly, the property was not put to an actual physical use by this corporation in the dispensation of any benevolences or public good at the beginning of the year 1948, or at any time during the year, nor was any other property so used, since the corporation had not yet engaged in any operations at all.

Appellee, on a premise that it is a nonprofit benevolent corporation, contends the holding of the property during a reasonable period of time while making plans for its use and arrangements for funds is "use" within the terms of the Constitution and statute providing tax.

In argument in support of the contention the appellee cites the following cases: Hibbing v. Commissioner of Taxation, 217 Minn. 528, 14 N.W. 2d 923, 156 A.L.R. 1294; El Jebel Shrine Association v. McGlone, 93 Colo. 334, 26 P. 2d 108; Smith, Co. Assessor, v. Zion Evangelican Lutheran Church, 202 Okla. 174, 211 P. 2d 534.

In the Hibbing case it was said by Minnesota court:

"The right of exemption carries with it, as an incident, a reasonable opportunity by an institution entitled to tax exemption of its property, in execution of an intention so to do, to adapt and fit property acquired by it for the use upon which the right of exemption rests."

In the El Jebel case the Colorado court held lots owned by the Shrine Association exempt from taxation where a portion of a building had been erected; said building being dedicated to a use for benevolent purposes.

In the Lutheran Church case, supra, this court held:

"Where a church purchases vacant lots with the intention of constructing a building thereon to be used solely and exclusively for religious purposes and such lots are not used for any other purpose, they are exempt from taxation under the provisions of section 6, art. 10 of the Constitution of the State, notwithstanding construction of the new building had not been started because of economic conditions created by war and thereafter because of injunction proceedings commenced against the church to prevent the construction of a building on the lots, where the church retained a bona fide continuous intention to construct such building on the lots."

In the opinion we refer to an expression of the Minnesota court in the Hibbing case, supra, and to the case of McGlone v. First Baptist Church of Denver, 97 Colo. 427, 50 P. 2d 547, wherein the Colorado court held, as stated in Pacific headnotes:

"Land purchased by church for new church building and cleared held within constitutional exemption from taxation of 'lots, with the buildings thereon, . . . used solely and exclusively for religious worship,' notwithstanding construction of new building had not been started because of business depression, where church retained bona fide continuing intention to construct building for religious purposes on land. (C.L. §7198; Const. art. 10, §5.)"

In McGlone v. First Baptist Church, supra, the court mentioned the El Jebel case, as follows:

"In the case of El Jebel Shrine Ass'n v. McGlone, supra, to which reference will be made as the Shrine case, there was on the lots involved a foundation that had cost $50,000, which we held was sufficient, under our Constitution and statutes, to constitute a building. It will be noted that both the Constitution and statute contain the same word-

ing as to the conditions rendering lots exempt from taxation, namely, 'with the buildings thereon' (that is, if there are buildings on the lots), and, 'if said buildings are used solely and exclusively for religious worship . . . or for strictly charitable purposes.' These two conditions unquestionably are co-ordinate. In the Shrine Case we held that a foundation is a building. There was no contention in that case, and could be none in reason, that the foundation, which is all there was on the lot, was used for strictly charitable purposes. Indeed there was no contention that it was used at all. The rule of construction that we applied in the Shrine Case was substantially this: When an admittedly charitable institution undertakes in good faith to extend its plant and facilities for charitable work and evidences this fact by the expenditure of money and the doing of work as part of a program looking toward the erection of a building to be used when completed for charitable purposes, this is within the spirit of the constitutional and statutory tax exemption provisions, and real property acquired and held in pursuance of such program so evidenced is exempt, *while the program in good faith is in process of being carried out.* In effect we held that the requirements of the Constitution and statutes are met if there is a *bona fide continuing intention to construct a building to be devoted to the specified uses, evidenced by work and the expenditure of money toward that end.*" (Italics above and hereinafter ours.)

In City and County of Denver v. George Washington Lodge Ass'n, 121 Colo. 470, 217 P. 2d 617, the Colorado court held that realty purchased for erection of building to be used as Masonic Lodge was not exempt from taxation notwithstanding that architect had prepared first sketch of building and realty had been re-zoned to permit erection of such building. In the opinion in the case a reference is made to former decisions as reflecting a step by step departure from strict construction of the tax exemption statutes of that state. It is said by the court:

"In El Jebel Shrine Association v. McGlone, . . . we held that a mere foundation constituted a building . . . . The second requirement of the statute, that the building be presently used for strictly charitable purposes, was not explored. Apparently future intent was deemed equivalent to present use. In McGlone v. First Baptist Church, . . . we held that the tearing down of the buildings on a property preliminary to the erection of a new building to be used for religious or charitable purposes was sufficient evidence of bona fide continuing intention to construct a building for charitable use to bring the lots within the exemption statute. In the present case, we are asked to go one step further and hold that the mere purchase under contract of a vacant property, with a general intent at some future date to erect thereon a building to be used for a charitable purpose, would, by some legal fiction, create both a building and establish its present use for a strictly charitable purpose . . . it appears high time for this court to determine, not merely how far we have *departed from the last departure,* but whether we have departed from the requirements of the statute itself. That statute does not exempt lots intended as building sites if the buildings to be erected are intended to be used for strictly charitable purposes, but only lots *with the buildings thereon* if said buildings *are used* for *strictly charitable purposes.* When, as here, there is neither the present charitable use nor the vestige of a building in which such use might be carried on, there appears to be no possible basis for exemption, except sympathy for a purpose which we may regard as commendable. . . . .

"Accordingly, we must hold that the property described in plaintiff's complaint is not exempt from taxation and may and should be assessed for taxation as other property not exempt."

In the Lutheran Church case, supra, the religious organization had long been conducting religious services and had grown into a congregation as to require a new and larger church building when certain vacant lots were purchased in purpose of erection of a larger building. A fund raising campaign was started and a large sum was accumulated in the building fund of

the organization. An architect was employed and plans and specifications for the new building were drawn. The fund raising campaign remained constant and continuous, although extraneous circumstances arose as to delay commencement of construction.

In the Lutheran Church case we adopted a principle of construction as adhered to in Minnesota and Colorado. In effect, we held that within the meaning of a provision for the exemption based upon the use of the property the requirement of use is met during the actual and continuing operations of the owner as a church, by holding the property for the purpose and with an intention to adapt and fix it for use in the continuing and expanding church program. Specifically, we held that while the continuing church program looking toward development of the lots for use for religious services was in good faith in process of being carried out, the lots were exempt from taxation.

In the instant case it is shown that appellee is a nonprofit benevolent corporation holding property dedicated to an ultimate use for charitable purposes, but, admittedly, the corporation has not put the property to any active use, and has not yet commenced to function so that it could actually so use this or any other property. There is no showing that the corporation has ever been engaged in any activity, except in the acceptance of gift of the property involved, and the execution of agreement to make use of the property for charitable purposes at some future time, or else make transfer thereof to an active charity, and that the corporation has employed an architect to make plans looking to a physical alteration of the property for future use for charitable purposes. Admittedly, the corporation was without funds with which to complete any plans for alteration of the property or to thereafter put the property in active use for charitable purposes, or, in fact, to engage in any manner in the activities purposed or intended by the corporation when it

was created. In the absence of a continuing intention to put the property to active use for charitable purposes, evidenced by continuing corporation activity or work or the expenditure of money toward that end, the rule of construction that we applied in the Lutheran Church case has no application here. Under the evidence, there was no definite program of putting the property in use in process of being carried out. The evidence viewed in a light most favorable to appellee's contentions is sufficient to show a general intention and possibility of future use of the property for charitable purposes, but goes no further.

The language of the Constitution, that, "property used exclusively for . . . charitable purposes . . . shall be exempt from taxation," in any reasonable construction, does not extend to a mere general intention or possibility of future use as a basis of tax exemption.

We hold the property here involved was not exempt from taxation for the year 1948, and should be assessed for taxation as other property not exempt.

The judgment is reversed, and the case remanded for further proceedings not inconsistent with the views herein expressed.

ARNOLD, C. J., and CORN, DAVISON, O'NEAL, and BINGAMAN, JJ., concur. HALLEY, V. C. J., and GIBSON and JOHNSON, JJ., dissent.

GIBSON, J. (dissenting). I think that the facts of this case bring it within the rule of Smith, County Assessor, v. Zion Evangelical Lutheran Church, 202 Okla. 174, 211 P. 2d 534. The property in question was conveyed to the Fite Foundation to be used for charitable purposes; it has been used for no other purpose, and the Foundation retains and has at all times "retained a bona fide continuous intention" to use the property for the charitable purposes for which it was conveyed to it.

The property was conveyed to the Foundation on December 31, 1947.

Thereafter, on April 29, 1948, the county assessor gave notice to the Foundation that the property had been assessed for taxation for the fiscal year 1948-1949.

The taxable status of property is determined as of January 1st of each year. The effect of the majority opinion, when applied to the facts of this case, is to hold that property conveyed on December 31, 1947, to a charitable organization for charitable purposes only was subject to assessment for taxation because on the very next day, January 1, 1948, it was not presently, physically and actively used for charitable purposes. The constitutional provision for the exemption of property *used* for charitable purposes should not be given such a strict and harsh construction as will deter charitable and religious organizations from acquiring property to be used for their purposes.

Paragraph one of the syllabus of the majority opinion is as follows:

"The use of property is the basis of tax exemption provided in the Constitution, and real estate acquired by a nonprofit benevolent c o r p o r a t i o n, though held for possible future use by such corporation, and dedicated to an ultimate use for charitable purposes by such corporation or some other charity or public usage, but not presently so used, may be subject to ad valorem tax until it is actually or constructively used for such a purpose."

The bona fides of the donors of the property and of those who organized the Fite Foundation has been upheld by the trial court, and there is no ground for an implication that the property will not be used for charitable purposes.

The syllabus quoted above holds that where property is acquired for charitable purposes "but not presently so used *may* be subject to ad valorem tax until it is actually or constructively used for such a purpose."

In my view, property either is taxable under the law or it is not. Its taxable status is fixed by the facts as to its ownership on January 1st and its present or intended use, and it is not within the discretion of the taxing authorities to tax it or exempt it from taxation.

I do not believe that this court would hold that a church building under construction but not in such finished condition that it could be used for church purposes on January 1st was subject to taxation. And the fact that the structure might be sold and used for some other purpose either before or upon its completion would not justify us in holding such property to be taxable.

In the instant case the property conveyed to the Foundation included a large and imposing building usable for the charitable purposes of the Foundation when contemplated remodeling of the building had been done.

In both instances there exists a bona fide intention to use the structures, when completed, for purposes which would cause the properties to be exempt from taxation. I see no difference between them.

I think the judgment of the trial court should be affirmed.

HALLEY, V. C. J., and JOHNSON, J., concur in these views.